United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JERRY ALAN RICHARDSON,

    Petitioner,

v.

W. L. MONTGOMERY,

    Respondent.

Case No. 16-cv-05639-WHO (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

## INTRODUCTION

Petitioner Jerry Alan Richardson seeks federal habeas relief from his state convictions on grounds that the prosecutor committed misconduct and defense counsel rendered ineffective assistance. He lists a number of reasons for his claims but none has merit. His petition for habeas relief is DENIED.

## BACKGROUND

Richardson was convicted on charges arising from the kidnapping of Anthony Patino. At roughly 3:30am on July 18, 2011 in San Jose, Patino parked his sister's boyfriend's Toyota Corolla. (Ans., Dkt. No. 15-6, *People v. Richardson*, No. H039069, 2015 WL 1932666 (Cal. Ct. App. Apr. 29, 2015) (unpublished)) at 101.)[1] As he walked to

---

[1] The pages cited are those generated by the Court's electronic filing system.

his house, he was confronted by a masked gunman, who forced Patino back into the car and directed him to drive. (*Id.*) Another car, Patino's stepfather's Isuzu trooper, which had been parked nearby, followed. (*Id.*) Eventually, the gunman ordered Patino to stop and step out of the car. (*Id.* at 101-102.) He then robbed Patino of his belongings, blindfolded him, drove him to a shed and locked him inside. (*Id.* at 102.)

As daylight broke, the gunman returned. He put Patino, still blindfolded, in the backseat of the Corolla and then drove. (*Id.*) During the drive, Patino heard the gunman talk to someone by telephone or to someone who was in the car. (*Id.* at 103.) After the car stopped, Patino heard a woman ask, "Who's that?" (*Id.*) The gunman said, "Some kid. I had to take him." (*Id.*) She reprimanded the gunman as "stupid" for taking Patino. (*Id.*) The gunman told her to follow him. (*Id.*) When the car stopped again, Patino was dropped off and instructed to count to one hundred before removing the blindfold. (*Id.*) When he took it off, he saw that he was in a Lowe's parking lot, which he thought was not far from the shed. (*Id.*) The Corolla was there with the keys in it. Patino drove to his house and called the police, who soon located the Isuzu. (*Id.*)

The police investigation led to Richardson's friend John Reed, in whose apartment the police found items taken from the Isuzu. (*Id.* at 105.) Tools for stealing cars, including keys shaped to fit a Toyota's locks, were also found there. (Respondent's Opp. to Mot. for Discovery, Dkt. No. 16 at 2.) Reed's cell phone records showed that there were four calls to or from Richardson's phone to Reed's on July 19, the day after the kidnapping. (*Id.*) One July 19 text message from Richardson was sent at 10:30am, that is, after the police found the Isuzu. (*Id.*) It read, "Cops got trooper. Where you at? j. phone."[2] (*Id.*) There were also 21 calls or texts between the two phones on July 20. (*Id.*)

A search of the Isuzu yielded a DNA sample to which Richardson was a "possible contributor" and a fingerprint that matched one of Richardson's that was on file with the

---

[2] The text was sent at 10:38pm PST on July 19. Because the records were generated in Texas, they show the text was sent at 12:38am CST on July 20, that is, two hours ahead of PST. (Ans., Dkt. No. 15-5 at 267.)

police. (*Id.*) At trial, the prosecutor contended Reed was the lookout while Richardson broke into and drove the Isuzu. (*Id.* at 3.)

A Santa Clara Superior Court jury found Richardson guilty of kidnapping during a carjacking, second degree robbery, and vehicle theft. (Ans., Dkt. No. 15-6 at 2.) Richardson admitted to the truth of various sentencing enhancement allegations. Consequent to the convictions and admissions, he was sentenced to a total term of 44 years and eight months to life in state prison.[3]

Richardson's attempts to overturn his convictions in state court were unsuccessful. This federal habeas petition followed. Along with the petition, Richardson filed a discovery motion (Dkt. No. 3), which was denied (Dkt. No. 24).

## STANDARD OF REVIEW

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of

---

[3] Richardson was sentenced to 19 years to life to run consecutively to a term of 15 years and eight months to run consecutively to another term of ten years. This last term was imposed as punishment for three other crimes to which Richardson had pleaded no contest. These other crimes are not related to the convictions at issue in this habeas petition. (Ans., Dkt. 15-1 at 1.)

3

materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively reasonable. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). This "[i]ndependent review is not a *de novo* review of the constitutional issue, but rather, the only method by which [a federal court] can determine whether a silent state court decision is objectively unreasonable." *See Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *See Harrington v. Richter*, 562 U.S. 86, 98 (2011).

**DISCUSSION**

Richardson claims (I) the prosecutor committed misconduct; and (II) defense counsel rendered ineffective assistance.

**I. Prosecutorial Misconduct**

Richardson claims the prosecutor committed misconduct by failing to (i) present Reed's pretrial statement; (ii) conduct an investigation into the Toyota Corolla; (iii) retrieve data from his cell phone; and (iv) disclose the statements of four persons

4

1  found with Reed when police came to arrest him. Undercutting these assertions, defense
2  counsel admitted at trial that she was in receipt of all discovery materials. (Ans., Dkt. No.
3  15-5 at 9.) Richardson also claims that the prosecutor (v) knowingly used false evidence
4  in violation of due process; (vi) committed misconduct during closing argument; and (vii)
5  committed misconduct by giving his personal opinion about Richardson's guilt.

### i.  Reed's Pretrial Statement

Richardson claims the prosecutor committed misconduct by failing to present to the jury a pretrial statement Reed made to Detective Gular.[4] (Pet., Dkt. No. 8 at 25-28.)

The record shows that Reed's statement was made available to the defense. Richardson's attorney opposed the admission of the statement unless Reed testified. The prosecutor agreed, and because Reed was not called to testify, the statement was never presented to the jury. (Ans., Dkt. No. 15-5 at 45-46.)

This claim, like all others in the petition, was not raised on direct appeal, but rather only on collateral review to the state appellate and supreme courts, which summarily denied it and the others. When presented with a state court decision that is unaccompanied by a rationale for its conclusions, a federal court must conduct an independent review of the record to determine whether the state court decision is objectively unreasonable. *See Delgado*, 223 F.3d at 982. This review is not de novo. "[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

The Court construes this as a *Brady* claim. Under *Brady*, the prosecution must disclose material evidence "favorable to an accused." *Brady v. Maryland*, 373 U.S. 83, 87

---

[4] The statement was not favorable to Richardson. In it, Reed admits that he acted as lookout while Richardson broke into and drove the Isuzu; Reed thought Patino had seen them breaking into the car; the pair took Patino to the shed and locked him in there; only he and Richardson were involved; the woman became involved only "at the end"; and that Richardson was the one who "kept pushing [the kidnapping] and kept forcing the issue: '[Richardson told me] [t]o tie the kid up and throw him in the truck.'" (Pet., Dkt. No. 8 at 87-91, 96-98, 101-102, 104-105.)

5

(1963). In order to establish a *Brady* violation, petitioner must show that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or impeaching; (2) the evidence had been suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued. *Banks v. Dretke*, 540 U.S. 668, 691 (2004).

Nothing like a *Brady* violation occurred here. The evidence was disclosed to the defense; the evidence was not favorable; and there has been no showing of prejudice.

Richardson counters that the statement was exculpatory because it contradicted Patino's version of events. While it is true that the accounts varied, the anomalies are insufficient to conclude that the statement was exculpatory. Reed repeatedly implicated Richardson, and even pointed to him as the instigator of the kidnapping.

Richardson also misunderstands the prosecutor's duty regarding favorable evidence. The prosecutor is obliged to disclose to *the defense* evidence that is material and favorable. He is not obliged to present such evidence to the jury. Even if the statement was exculpatory, the evidence was disclosed to the defense, which chose to make no use of it.

Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### ii. Toyota Corolla

Richardson claims the prosecutor failed to disclose the results of an investigation of the Toyota Corolla. (Pet., Dkt. No. 8 at 28.) This claim fails. No such report exists, as I determined in the order denying petitioner's motion for discovery. (Order Denying Motion for Discovery, Dkt. No. 24 at 4.) Further, such a report cannot be generated now. (*Id.*) The crime occurred roughly six years ago, and there "is no reason to believe physical evidence from the Corolla was preserved." (*Id.*)

These facts doom Richardson's claim that the prosecutor withheld exculpatory evidence. A prosecutor cannot withhold non-existent evidence. No one knows what such a report would have said or not said, let alone whether such evidence was exculpatory.

The state superior court thought that a forensic report from the Corolla would be

6

irrelevant:

> [P]etitioner has failed to raise a prima facie basis for relief. Petitioner's prints and DNA were found on the stolen car, an Isuzu Rodeo. There is no showing that examining a Toyota Corolla was relevant to ruling out Petitioner as a suspect or that any other investigation would have resulted in a different result.

(Pet., Dkt. No. 8 (State Superior Court's Habeas Denial) at 10.)

Indeed, the prosecutor pointedly admitted at trial that there was no evidence linking Richardson to the Corolla:

> The most important thing that Detective Gular told you was what he didn't tell you. You heard no evidence from Detective Gular that Mr. Richardson's DNA or fingerprint were on the Toyota Corolla. You heard no evidence that Mr. Richardson was ever in the Toyota Corolla.

(Ans., Dkt. No. 15-5 at 270-271.)

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### iii. Cell Phone Data

At trial, the prosecutor alleged Richardson obtained a new phone after the crimes were committed. Richardson disputes the prosecutor's allegation. In fact, he believes the prosecutor withheld the internal data from his Metro PCS cell phone because such data would have contradicted the prosecutor's allegations. (Pet., Dkt. No. 8 at 31.)

This claim fails because no such report exists, as I determined in the order regarding discovery. (Order Denying Mot. for Discovery, Dkt. No. 24 at 5.) Because the report does not exist, Richardson cannot show the prosecutor withheld it. Further, Richardson's Metro PCS cell phone records show that he activated his cell phone account on July 19, 2011, one day after Patino was kidnapped, which is consonant with the prosecutor's assertions at trial. (*Id.*) There were no other records. (*Id.*)

1   This claim was summarily rejected by the state supreme court. Upon an
2   independent review of the record, I conclude that the state court's rejection of this claim
3   was not objectively unreasonable and is entitled to AEDPA deference. The claim is
4   DENIED.

### iv. Disclosure of Statements from Persons in Reed's Apartment

In his motion for discovery, Richardson asked for "full" discovery of "the complete police report" regarding the arrest of Reed. (Dkt. No. 3 at 3.) He contends that there were four other persons with Reed at the time of his arrest. (*Id.*) He believes that police must have taken statements from these persons, statements that may be important. (*Id.*) "It is highly probable that these individuals made direct statements that refute the prosecution's theory, and it is highly probable that these four individual[s] had relevant information in their statements as to the actual events of July 18, 2011, that remove petitioner as a suspect." (*Id.*) He reiterates this claim in his petition. (Pet., Dkt. No. 8 at 28-29.)

This claim fails because Richardson has not shown that any statements were taken, or that any such statements (if they existed) were favorable to him. In fact, defense counsel admitted she was in receipt of all discovery materials. (Ans., Dkt. No. 15-5 at 7.) Because his claim is based on speculation that such evidence existed, Richardson has not shown that the prosecution withheld evidence.

As with the above claims, this claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### v. Use of False Evidence

Richardson claims that the prosecutor knowingly used false evidence by (i) withholding Reed's statement from the jury; (ii) failing to challenge the cell phone records; and (iii) failing to obtain a report from the Toyota Corolla. (Pet., Dkt. No. 8 at 39.)

The prosecution's knowing use of false evidence constitutes a violation of due

8

process. *Napue v. Illinois*, 360 U.S. 264, 269 (1959). To establish a due process violation based on the government's use of false evidence, petitioner must show that "(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

This claim cannot succeed because no false evidence was presented. Failing to present evidence (Reed's statement) is, quite obviously, not the same as presenting false evidence. Defense counsel had Reed's statement and decided against presenting it to the jury. This claim also assumes that the cell phone records were inaccurate, yet Richardson has made no showing that there is any reason for the prosecutor to have made that assumption. Finally, failing to obtain a report on the Toyota Corolla is not the same as presenting false evidence.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### vi. Closing Argument

Richardson claims the prosecutor committed misconduct during closing argument by (a) arguing that petitioner used a different cell phone after the crimes were committed; (b) arguing that his defense attorney conceded that petitioner was guilty of stealing the Isuzu; (c) arguing that petitioner's text to Reed was an admission of guilt; and (d) offering his opinion that Richardson was guilty.

A defendant's due process rights are violated when a prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Under *Darden*, the first issue is whether the prosecutor's conduct was improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). It is "the fairness of the trial, not the

9

culpability of the prosecutor" that is the touchstone of the due process analysis. *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

### a. Cell Phone

In his closing argument, the prosecutor contended that Richardson used a different cell phone after the crimes were committed. (Ans., Dkt. No. 15-5 at 545.) He based this contention on the facts that Richardson's cell phone records show that his phone was not active until July 19 (the day after Patino was kidnapped), and that his text to Reed after the crime was signed "j. phone," as if Richardson knew that Reed would not recognize the number from which the text was sent.[5] (Pet., Dkt. No. 8 at 34.)

Habeas relief is not warranted here. The prosecutor's assertion that Richardson used a new cell phone starting on July 19 was a reasonable inference based on permissibly admitted evidence. The cell phone records show Richardson's phone activated on that date, and signed his first text to Reed on that phone "j. phone." From those facts one can reasonably infer that Richardson was using a new phone. Presenting such arguments cannot plausibly be thought misconduct.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### b. Comment on Defense Counsel's Statement

Richardson claims the prosecutor committed misconduct by stating that defense counsel admitted in her opening statement that Richardson was guilty of stealing the Isuzu. It appears there were two times when the prosecutor made such comments:

> [O]bviously, the easiest charge to prove I believe is Count 3, which was the theft of [the] Isuzu. Defense counsel, Ms. Burneikis, has admitted that in

---

[5] Richardson also contends the prosecutor lied or misrepresented the testimony of Detective Gular. A review of the prosecutor's comments and Gular's testimony shows no support for this assertion.

10

|   |   |
|---|---|
| 1 | — in her opening statement — that he's guilty of taking — of that theft of the vehicle. |
| 2 | . . . . |
| 3 | First decide whether he's guilty of theft of a vehicle; that is, the Isuzu, Count 3. I believe that he's — [in] opening statement counsel's admitted that. And that was his initial intent — to steal that Isuzu. So that's given. |

(Ans., Dkt. No. 15-5 at 533-534, 540.)

In her closing argument, defense counsel responded to the prosecutor's comments on three occasions:

> Let me be very clear, ladies and gentleman. The district attorney told you twice in his closing argument that I told you in my opening that Mr. Richardson stole the car. That's not what I told you. I told you Mr. Richardson used and drove a car that was not his own without the consent of the owner. [¶] We don't know who took the car from the driveway. We know Mr. Richardson drove it. I told you that. We don't have any evidence to prove he was the one who took it.
> . . . .
>
> [Petitioner's use of 'j. phone' meant only that] Mr. Richardson was driving a stolen vehicle and he was worried because the police found it. . . [It] [t]ells you he's worried that the cops now found the car that he's driving around that he knew was stolen. [¶] So why is he worried about this? Did he get it from Mr. Reed? Did he get it from the person who actually took it on the 18th? We don't know. [¶] This does not prove Mr. Richardson is the person who took the Isuzu. Doesn't tell us who's responsible for the kidnapping and carjacking.
> . . . .
>
> In the beginning of this case, I told you what you were going to hear is evidence that was going to prove what Mr. Richardson is guilty of. I told you that he drove a vehicle that was not his without the permission of the owner. That has been proven to you. I told you that his fingerprints and his DNA were going to be found in the Isuzu. That has been proven to you.

(Ans., Dkt. No. 15-5 at 551, 553, 555-556.)

Richardson alleges the prosecutor's statement was a "lie" because counsel "merely stated that [p]etitioner had possession of [the Isuzu] because John Reed gave it to

[p]etitioner to sell, and divide the money." (Pet., Dkt. No. 8 at 34.)

Under California law, theft of a vehicle occurs when a person

> *drives* or takes *a vehicle not his or her own, without the consent of the owner thereof*, and with intent either to permanently or temporarily deprive the owner thereof of his or her title to or possession of the vehicle, whether with or without intent to steal the vehicle.

California Penal Code § 10851(a) (emphasis added).

Habeas relief is not warranted here. The prosecutor spoke the truth — defense counsel, certainly unintentionally, admitted that Richardson was guilty of car theft, as defined by statute. "I told you Mr. Richardson used and drove a car that was not his own without the consent of the owner." While defense counsel did not say "My client is guilty of vehicle theft under Penal Code section 10851(a)," her admissions were, more or less, the equivalent of such a statement. (The statute does not require, contrary to what defense counsel stated, that he was the one who took or stole the car. Driving itself is sufficient to meet the requirements of the statute.) The prosecutor's gloss gave a broader meaning to the comments than defense counsel intended that they have, but it was not untrue. Under those facts, I cannot say that the state court's rejection of Richardson's misconduct claim was objectively unreasonable. This claim is DENIED.

### c. Text Message

Richardson claims the prosecutor committed misconduct with his "constant statements to the jury during closing argument[] that the text ["Cops got trooper. Where you at? j. phone."] is an absolute admission of guilt." (Pet., Dkt. No. 8 at 35.) This, according to Richardson, was misconduct. He argues that the trial court admitted the text message only as evidence that Richardson and Reed had communicated with each other. The text then was not admitted for the truth the matter asserted, that is, that the police had found the Isuzu.

The record does not support his argument. Though the trial court at first admitted the text merely as evidence that the two had communicated, it ended up admitting the text

12

as an admission of a party opponent, an exception to the hearsay rule.[6]

Also, the trial court's hearsay ruling is irrelevant. It matters little if the prosecutor had used the text for the truth of the matter — that in fact the police had found the trooper. What matters are the inferences one can draw from the text: it was sent to Reed from Richardson's phone; it showed an awareness that the Isuzu was of interest to the police; and it tied Richardson and Reed to the Isuzu.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### d. Personal Opinion

Richardson claims the prosecutor committed misconduct by giving his personal opinion that petitioner was guilty. (Pet., Dkt. No. 8 at 36-37.) He bases his claim on the following statements by the prosecutor:

> I believe the facts show that he is guilty because he was the person driving;
> . . . .
>
> And I would submit to you [the lesser included offense instructions] won't apply under the facts of this case;
> . . . .
>
> I think it will be pretty clear they — they don't apply. You can disregard these lesser-included offenses that — that you'll get in your packet, and I'm not going to talk about them anymore;
> . . . .
>
> I will argue that he's guilty as an aider and abettor of the gunman and by stealing the Isuzu as a part of this kidnapping and robbery.

(Ans., Dkt. No. 15-5 at 532, 533, and 537.)

---

[6] Richardson may be confused by the use of "admission." In the hearsay context, "admission" means "any statement or assertion made by a party to a case and offered against that party." BLACK'S LAW DICTIONARY 50 (Bryan A. Garner ed., 8th ed., 2004.) It applies to "any statement," not only to confessions of guilt.

13

A prosecutor may not express his personal opinion of the defendant's guilt. *United States v. Moreland*, 622 F.3d 1147, 1161 (9th Cir. 2010) (citing *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985). He may, however, make reasonable inferences based on the evidence. In a case that addressed prosecutorial vouching, the Supreme Court cited with approval the guidelines contained in the ABA's Standards for Criminal Justice: "In appearing in his professional capacity before a tribunal, a lawyer shall not . . . [a]ssert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; *but he may argue, on his analysis of the evidence, for any position or conclusion with respect to matters stated herein.*" *United States v. Young*, 470 U.S. 1, 7 n.3, 11-12 (1985) (emphasis added).

There was no prosecutorial misconduct here. The prosecutor was not giving his personal opinion, but rather made the reasonable comment that "the facts" presented to the jury showed guilt. This certainly falls within his freedom to argue "on his analysis of the evidence . . . any position or conclusion."

As with the above claims, this claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

## II. Assistance of Counsel

Richardson claims defense counsel rendered ineffective assistance by failing to (i) review the discovery materials; (ii) put Reed's statement into evidence or call him as a witness; (iii) compel discovery of a forensic report from the Toyota Corolla; (iv) compel discovery of the witness statements from the persons found in Reed's apartment; (v) have these same persons provide physical evidence; (vi) obtain internal records from petitioner's cell phone; (vii) present expert testimony from someone at the San Jose Regional Auto Theft Task Force; (viii) determine who called Reed from the Corolla; and (ix) present a defense.

14

In order to prevail on a claim of ineffectiveness of counsel, a petitioner must establish that (1) counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), and (2) he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (citing *Strickland*, 466 U.S. at 693).

The standards of 28 U.S.C. § 2254(d) and *Strickland* are "highly deferential . . . and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation marks and citations omitted). "The question [under § 2254(d)] is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

### i.   Review of Discovery Materials

Richardson claims defense counsel rendered ineffective assistance by failing to review Reed's and Patino's statements to police and at various court proceedings. Had she reviewed Reed's statement, she would have found it full of contradictions, and therefore useful for the jury to hear it. Had she been familiar with Patino's statements, she would have discovered that he was never able to identify anyone involved in the crimes and that he had admitted that he had never been threatened. Such facts would have been beneficial to the defense, had they been presented to the jury, according to petitioner. (Pet., Dkt. No. 8 at 43.)

Habeas relief is not warranted here. First, counsel was familiar with Reed's statement, as evidenced by her opposition to the prosecution's attempt to have the statement admitted. This opposition was a reasonable tactical decision. In the statement,

15

Reed repeatedly implicated Richardson, and even pointed to him as the instigator of the kidnapping. While the statement may also have contradicted Patino's version of events, counsel likely thought admission of the statement would have been more damaging than helpful. Because this was a reasonable tactical decision, the state court's rejection of the claim was reasonable.

Second, Richardson fails to show how counsel's performance was deficient in handling the Patino evidence, or that her performance resulted in prejudice. A review of her trial examination of Patino indicates that she was adequately familiar with the witness and the evidence he presented.

Also, Patino, through his trial testimony, provided the jury with the same facts Richardson wishes counsel had given to the jury. He even admitted at trial that he did not recognize Richardson, who was sitting at the defense table. (Ans., Dkt. No. 15-5 at 146.) How counsel's performance was lacking in this regard is unclear. The rejection of this claim by the state was reasonable.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### ii. Reed's Statement Into Evidence

Richardson claims counsel should have moved to admit Reed's statement at trial and have called him as a witness. (Pet., Dkt. No. 8 at 43.) As noted several times in this order, counsel made a reasonable tactical decision to avoid presenting Reed's statement. Because his statement would have been used had he testified, she likely decided against calling him as a witness for this very reason, and out of fear that his testimony would provide further inculpatory evidence.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is

1 DENIED.

### iii. Forensic Report from the Toyota Corolla

Richardson claims counsel should have moved for discovery of a forensic report of the Toyota Corolla. (Pet., Dkt. No. 8 at 45.) Because there was no such report to be discovered, counsel cannot have been ineffective in failing to move for discovery of it.

The Court also construes the claim to mean that defense counsel should have moved for a forensic study of the Corolla and the subsequent forensic report. Even when so construed, the claim lacks merit. There is no evidence that Richardson had anything to do with the Corolla. The prosecutor's case was based on his supposition that Reed drove the Corolla and Richardson the Isuzu.[7] How counsel was ineffective in any way on this issue is unclear.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### iv., v. Third Parties

Richardson claims defense counsel rendered ineffective assistance by failing to obtain statements and physical evidence from the persons found at Reed's apartment when he was arrested. (Pet., Dkt. No. 8 at 46.) As noted above, and in the order denying petitioner's motion for discovery, Richardson offers nothing other than speculation that these witnesses had any connection to the Patino kidnapping, or that they could have offered any evidence helpful to the defense. Without some reason to believe counsel should have investigated these persons, Richardson's claim that counsel rendered ineffective assistance is without basis. Rather than offering speculation, a federal habeas

---

[7] Richardson alleges that a forensic report "could have been used to refute the fact that the [p]rosecutor infers [*sic*] to the jury that [p]etitioner was in the Toyota Corolla." (Pet., Dkt. No. 15-5 at 26.) The record does not support this assertion. Richardson cites nothing showing that the prosecutor led the jury to believe he was in the Corolla. The prosecutor explicitly stated that there is no evidence Richardson was in the Corolla. (Ans., Dkt. No. 15-5 at 270-271.)

17

1 petition "is expected to state facts that point to a real possibility of constitutional error."
2 *Mayle v. Felix*, 545 U.S. 644, 655 (2005) (internal quotation marks and citation omitted).

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### vi. Cell Phone Report

Richardson claims defense counsel rendered ineffective assistance when she failed to obtain records from his cell phone. Such records, he contends, would have refuted the prosecution's assertion that petitioner "destroyed his previous cell to cover up his involvement" in the crimes. (Pet., Doc. 8 at 46-47.)

This claim lacks merit. As discussed in this and my prior order, there was no evidence of any cell phone activity before July 19. Richardson offers only speculation that such records existed and that such records, if extant, would show what he believes they would show. Counsel's performance cannot plausibly be thought deficient or prejudicial for failing to investigate mere speculation. Her decision not to investigate was reasonable also because she knew that Metro PCS, Richardson's carrier, stated that it had no records for petitioner prior to July 19.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### vii. Expert Witness

Richardson claims defense counsel rendered ineffective assistance for failing to call an expert witness from the San Jose Regional Auto Theft Task Force. He contends that such a witness would have testified that "individuals steal cars every day in San Jose, give them to a middle man, and the middle man sells the stolen vehicle to a chop shop, takes a percentage of the money and gives the rest of the money to the original individual that

18

stole the car." (Pet., Dkt. No. 8 at 47.) Such testimony would explain why his DNA and fingerprint were on the Isuzu and his reason for sending Reed that text message ("Cops got trooper. Where you at? j. phone."). Through that message, Richardson "was merely informing Mr. Reed that the vehicle he gave to [p]etitioner to sell[ ] was recovered by the cops." (*Id.*)

This claim lacks merit. First, "[s]peculation about what an expert could have said is not enough to establish prejudice." *Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997). Second, the defense counsel presented was the one Richardson wanted, that he was guilty of driving a stolen car, but not of stealing it or of kidnapping Patino. Third, it was not necessary to call an expert witness. That cars are stolen and sold for parts is a commonly known fact. Counsel's failure to call an expert witness to explain such everyday knowledge cannot plausibly be thought deficient or prejudicial.

This claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA deference. The claim is DENIED.

### viii. Evidence Regarding Reed's Call

Richardson claims defense counsel rendered ineffective assistance by failing to obtain the telephone number of the person Reed called while he drove the Corolla. Had she obtained such evidence, she could have shown that Reed called someone other than petitioner. (Pet., Dkt. No. 8 at 47.)

This claim lacks merit. Even if such evidence had been obtained and even if it established that Reed did not call Richardson from the Corolla, it would not have erased or undermined the evidence of guilt presented at trial. Richardson's DNA and fingerprint were found on the Isuzu, and he sent an incriminating text to Reed.

As with all of the above claims, this claim was summarily rejected by the state supreme court. Upon an independent review of the record, I conclude that the state court's rejection of this claim was not objectively unreasonable and is entitled to AEDPA

19

deference. The claim is DENIED.

### ix. Presenting a Defense

Richardson claims defense counsel rendered ineffective assistance by failing to present a defense. However, all the instances he cites are repetitions of the ineffective assistance claims discussed above.[8] Because these claims have been addressed already, the instant claim is DENIED.

## CONCLUSION

The state court's adjudication of Richardson's claims did not result in decisions that were contrary to, or involved an unreasonable application of, clearly established federal law, nor did they result in decisions that were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Richardson may seek a certificate of appealability from the Ninth Circuit.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED.**

**Dated:** December 4, 2017



WILLIAM H. ORRICK
United States District Judge

---

[8] Richardson's conclusory allegations that counsel failed to call witnesses, raise an affirmative defense, and present evidence are insufficient to state a claim for relief. He must state what witnesses, what defenses, and what evidence should have been presented. A federal habeas petition "is expected to state facts that point to a real possibility of constitutional error." *Felix*, 545 U.S. at 655. When Richardson has presented specific instances, I have addressed them.

20